## BOCKOL et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 23, 1925.)

No. 3316.

1. **Conspiracy 47—Evidence held to sustain conviction for conspiracy to violate Prohibition Act.**

Evidence held to sustain a conviction for conspiracy to unlawfully import, possess, and transport liquors.

2. **Criminal law 423(3)—Evidence held admissible against all defendants.**

False receipts, purporting to evidence a sale by one defendant charged with conspiracy to another of toilet articles containing alcohol, produced at a meeting of the conspirators and there given to the supposed buyer, held admissible against all on a trial for the conspiracy.

In Error to the District Court of the United States for the District of Delaware; Morris, Judge.

Criminal prosecution by the United States against John L. Bockol and others. Judgment of conviction, and defendants bring error. Affirmed.

See, also, 3 F.(2d) 197

William T. Connor and John R. K. Scott, both of Philadelphia, Pa., for plaintiffs in error.

David J. Reinhardt, of Wilmington, Del., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the three defendants, Bockol, Fleishman, and Hyman, were indicted on an indictment containing three counts, the first charging a conspiracy entered into on October 17, 1924, at Lewes, in the district of Delaware, to transport from sea to Rehoboth, Del., unlawful liquors, and from thence to transport the same to Chester, in the state of Pennsylvania. The second count was to so transport from sea to said Rehoboth, and the third count to unlawfully possess at Rehoboth. On trial, the defendants were convicted and sentenced on all three counts.

[1] The proofs on behalf of the government tended to show that on October 17, 1924, the three defendants together came in Bockol's automobile to the home of one Marshall, at Lewes, Del., and said they wanted to see whether a boat he had was fitted to carry alcohol from Rum Row. Thereafter Bockol and the three other men went in his car to Marshall's boat. They all went aboard with one Edgens, who was in Marshall's employ, and he took the boat with the four men outside the jetty to Broad Kiln river. Hyman, one of the defendants, pronounced the boat able to carry 200 cases of alcohol, to which Bockol and Fleishman agreed, and Hyman said, if the engine would not do, he would put in a larger one. He also said that he would back up, in fines up to $25,000, any one who ran rum for him.

As the boat got to the mouth of the jetty, the three men wanted to go right on to Rum Row; but Marshall said he had a job of work on hand and he would have to return. The three defendants then said they would return on Sunday and go to Rum Row and bargain for the schooner's whole cargo. Marshall then agreed with the defendants that he would store at Rehoboth, in a house he had rented, at least 100 cases at a time, and the defendants were to come to Rehoboth and carry the cases to Chester. Referring to the parts each of the three defendants were to play, Marshall testified that Fleishman was to stay in Lewes, and make his headquarters at the hotel, and convey from Rehoboth to Chester, Hyman was to foot the bills, and Bockol was to act with Hyman and take care of the alcohol at the other end.

When they got back to the auto, Hyman said he did not bring a check with him, and told Bockol to give one of $1,000 to Edgens for Marshall; but, on the latter stating that Edgens probably could not get it cashed, Bockol's check was given to Marshall, with the understanding the proceeds should be given to Edgens to buy 100 cases of alcohol. The arrangement was that the alcohol was to

be brought into Broad Kiln creek and landed at Milford, where Marshall was to have a truck ready and take it to Rehoboth. It was arranged that $5 a case was to be paid for bringing the alcohol ashore, viz. one-quarter to the boat, one-quarter to Marshall, one to Edgens, and another to his mate, Schmierer. As showing the reason for the defendant's landing the alcohol in Delaware, Hyman and Bockol told Marshall that they had the cutter Kickapoo fixed up at Atlantic City; that there was a lot of competition there; that they had had a lot stolen; that they could not get it in, and they wanted to get out of that part of the country and operate elsewhere. Marshall was to report the next morning at 6 o'clock to Bockol, at Chester, the outcome of. Edgens' and Schmierer's trip.

It will thus be seen that this testimony, if believed, would show a general and continuing conspiracy on the part of these three defendants to commit all the offenses charged in the indictment, which it will be noted were not restricted to the 100 cases then arranged for, but was a general continuing conspiracy. The conspiracy was followed by overt acts. Bockol gave the check to Marshall, who had it cashed, gave the money to Edgens, who went out to Rum Row with Marshall's boat and bought alcohol, as arranged, and Marshall spent the night at Milford with his truck awaiting the alcohol. The first venture, however, miscarried. The weather freshened up; the boat bade fair to sink, and was unable to make the landing intended, and was seized by the coast guards at Lewes. Edgens and Schmierer were arrested and made a clean breast of the transaction to the authorities. Early in the morning Bockol called Marshall by telephone and inquired how things were coming on, and, being told, he thereupon, doubtless believing that Hyman would not repay him the $1,000 he had advanced at Hyman's request to Marshall, stopped payment on his check; whereupon Marshall, no doubt led by this desertion of his fellow conspirator, also went to the authorities and confessed his part in the conspiracy. He was advised by the latter not to inform his associates of his confession; so, still relying on him, the three others, Bockol, Hyman, and Fleishman, came twice to the Dupont Hotel in Wilmington and met Marshall there. At that meeting, the conspiracy was talked over. Marshall insisted he be repaid his $1,000, and the three urged that they go on operating and that out of future profits, he (Marshall) would get back his $1,000

and the value of his confiscated boat, some $1,400.

[2] During one of such meetings, Bockol, in the presence of Hyman and Fleishman, gave Marshall receipted bills of different simulated dates prior to October 17, 1924, falsely evidencing sales of several thousand dollars' worth of toilet preparations containing alcohol. These receipts were admitted in evidence; the defendants objecting on the ground they could not affect Hyman and Fleishman, and that their date antedated that of the alleged conspiracy. We think the court committed no error in admitting them. They were part of conversations by all the defendants about the conspiracy, and affected all parties present and consenting, for the court left to the jury the question of Hyman and Fleishman knowing of and participating in giving such receipts. Had the receipts been genuine, and evidenced real transactions of earlier date than the conspiracy, a different situation would have existed; but, in view of the testimony that the three defendants were urging Marshall to join in further operations, with a view to recouping his losses, and bearing in mind that, if Bockol got further supplies of alcohol, he would have to show the government, when called on, what he had done with his alleged production of toilet articles, we cannot say that the court erred in admitting the papers in evidence.

Clearly, the meeting of the four had to do with the conspiracy, and what was done was in the presence of all parties. The receipts corroborated Marshall's story, and tended to show that the conspiracy was not for a single transaction of the 100 cases then confiscated, but contemplated continuous operations by these conspirators, and these false receipts were a means of putting the semblance of commercial honesty on their use of alcohol. Just how this alleged sale of several thousand dollars' worth of toilet water in a community such as Lewes and to a man in Marshall's vocation would give the semblance of verity and the guise of honesty to Bockol's alleged toilet water business, we are not called upon to say, for evildoer's explanations usually fail to stand the test of credibility. It suffices to say such a course, outlined and acted upon by Bockol in the presence of Hyman and Fleishman, seemed to them, at least in some way, to bear on the continuation of operations they were then urging, and as a part of the meeting of them all the receipts were properly admitted in evidence and submitted to the jury.

We have examined the record in full, and given due consideration to other contentions

made. The defendants had able counsel; they went on the stand and told their own stories; the case was submitted to the jury in a full and fair charge, to which no exceptions were taken; and the court imposed lenient sentences. They employed another set of counsel, who have prosecuted this appeal, but in the exceptions taken at the trial by their then counsel, and in the alleged errors which their now counsel would have us consider under our rule eleven providing the court at its own option "may notice a plain error not assigned," we find nothing in the way of error.

The judgment is therefore affirmed, and the record remanded for due procedure.